**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER BYRD, | ) | CASE NO. 5:26-CV-00077-BMB |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN<br>UNITED STATES DISTRICT JUDGE |
| | ) | |
| v. | ) | MAGISTRATE JUDGE<br>CARMEN E. HENDERSON |
| WARDEN ANGELA STUFF, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant, | ) | |

## I. Introduction

Christopher Byrd ("Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging his convictions for various drug offenses and having a weapon while under disability, for which he is serving an indefinite prison term of a minimum of five years and a maximum of seven and a half years. This matter was referred to the undersigned under Local Rule 72.2 to prepare a report and recommendation on Petitioner's petition. For the reasons set forth below, the undersigned recommends that the Court deny the petition in its entirety.

## II. Factual Background

The Ohio Court of Appeals for the Ninth Appellate District set forth the following facts[1] on direct appeal:

> {¶2} On September 25, 2023, Detective Harvey with the Akron Police Department applied for and obtained a search warrant for a residential property located at 630 East Catawba Avenue in Akron. The search warrant related to suspected drug

[1] The facts found by the appellate court of record "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

trafficking. Relevant to this appeal, the search warrant permitted the search and seizure of:

> Controlled substances, such as methamphetamine and other drugs of abuse; Drug abuse instruments, paraphernalia, and any other items used in the manufacturing, preparation, distribution, sale or use of illicit substances; deadly weapons, such as firearms and ammunition; records, such as documents, receipts, ledgers or other instruments (including those stored electronically) relating to illicit drug transaction; mail and other documents showing an indicia of control over the property; currency, safes and other lockboxes; computers, electronic tablets, removable hard drives and storage devices, cellular phones, cameras (and the electronically stored data and information found on any of the above devices/hardware); [and] Any other evidence of TRAFFICKING IN CONTROLLED SUBSTANCES or POSSESSION OF CONTROLLED SUBSTANCES.

{¶3} In the "probable cause" section of his affidavit in support of the search warrant, Detective Harvey averred, as summarized below, that:

(1) he personally participated in the investigation of Byrd's distribution of controlled substances;

(2) he and other investigators received information that Byrd was supplying large amounts of crystal methamphetamine in the greater Akron area;

(3) on September 28, 2022, the Akron Police Department and MEDWAY Drug Enforcement Agency received information from a confidential informant ("C.I.") indicating that an individual named Quincey Byrd was selling methamphetamine in the Akron area;

(4) MEDWAY investigators believed the C.I.'s information was reliable because "his information has been consistently corroborated by independent investigation, corroborated by other witnesses, and corroborated by other information derived through the course of the investigation[;]"

(5) to his knowledge, the C.I. never provided deliberately false or misleading information to MEDWAY investigators;

(6) on December 8, 2022, the C.I. conducted a controlled purchase of narcotics from Quincey Byrd in a parking lot wherein: (a) Quincey Byrd and the C.I. met in a parking lot; (b) Quincey Byrd told the C.I. that a white vehicle would be arriving with the methamphetamine; (c) a white vehicle registered to Byrd arrived to the parking lot; (d) the driver of the white vehicle matched the description of Byrd listed on the vehicle's registration; (e) Quincey Byrd met

with the driver of the white vehicle; (f) after meeting with Quincey Byrd, the white vehicle left the parking lot; (g) Quincey Byrd then sold a substance that field-tested positive for methamphetamine to the C.I.; (h) the foregoing was observed by him (Detective Harvey), the Akron Police Department Narcotics Unit, and/or MEDWAY Drug Enforcement Agents;

(7) on September 18, 2023, he (Detective Harvey) received information from the Stark County FBI Safe Streets Task Force indicating that a "source of information" who had known Byrd for many years told them that: (a) Byrd sold crystal methamphetamine; (b) Byrd lives at 630 East Catawba Avenue in Akron; (c) Byrd had multiple pounds of methamphetamine at his house at any given time; (d) Byrd delivered methamphetamine to parking lots near his house; (e) he had purchased methamphetamine from Byrd as recently as one month ago; (f) Byrd's brother had recently been arrested for selling narcotics;

(8) on September 19, 2023, the Akron Police Department Narcotics Unit assisted by the Akron Safe Streets Task Force executed a search warrant at a suspected drug dealer's house wherein the detectives discovered: (a) an empty box addressed to Byrd; and (b) text messages between the suspected drug dealer and Byrd from August 10, 2023, regarding the suspected sale of methamphetamine;

(9) the suspected drug dealer later stated that he purchased methamphetamine from Byrd and that Byrd lived at 630 East Catawba Avenue in Akron.

{¶4} Upon execution of the search warrant, Byrd was arrested and later charged with several drug-related offenses, including drug trafficking and possession. Byrd moved to suppress the evidence law enforcement seized during the search of 630 East Catawba Avenue. Byrd argued that the affidavit Detective Harvey submitted in support of the search warrant failed to set forth probable cause because it relied upon stale facts and unreliable information from confidential informants. Byrd also argued that the search warrant failed to satisfy the particularity requirement under the Fourth Amendment to the U.S. Constitution and Article I, Section 14 of the Ohio Constitution because it authorized an overly broad search and seizure of "computers, electronic tablets, removable hard drives and storage devices, cellular phones, cameras (and the electronically stored data and information found on any of the above devices/hardware)" with "no temporal boundary or subject matter limit ...."

{¶5} The State opposed Byrd's motion to suppress. The trial court held a hearing on Byrd's motion. Neither Byrd nor the State presented testimony at the hearing. Instead, the parties presented arguments solely on the "four corners" of the search warrant.

{¶6} After the hearing, the trial court issued a judgment entry that denied Byrd's motion to suppress. First, the trial court held that Detective Harvey's affidavit set

forth sufficient probable cause because the affidavit's reliance upon information the C.I. provided was also supported by "personal observations and independent investigation." Second, the trial court determined that the affidavit did not rely upon stale facts because the events from 2022 were refreshed by the more recent events from September 2023. Third, the trial court determined that the search warrant met the particularity requirement because it was "sufficiently specific."

{¶7} In determining that the search warrant met the particularity requirement, the trial court cited case law for the proposition that a search warrant that includes broad categories of items may nevertheless be valid if the description of the items is as specific as the circumstances and the nature of the activity under investigation permit. The trial court also cited case law for the proposition that a search warrant fails the particularity requirement if it gives the executing officers unlimited discretion in determining what items are subject to search and seizure.

{¶8} In determining that the search warrant was "sufficiency specific[,]" the trial court cited the language of the search warrant indicating which items were subject to search and seizure, including:

> Controlled substances, such as methamphetamine and other drugs of abuse; Drug abuse instruments, paraphernalia, and any other items used in the manufacturing, preparation, distribution, sale or use of illicit substances; deadly weapons, such as firearms and ammunition; records, such as documents, receipts, ledgers or other instruments (including those stored electronically) relating to illicit drug transaction; mail and other documents showing an indicia of control over the property; currency, safes and other lockboxes; computers, electronic tablets, removable hard drives and storage devices, cellular phones, cameras (and the electronically stored data and information found on any of the above devices/hardware); [and] Any other evidence of TRAFFICKING IN CONTROLLED SUBSTANCES or POSSESSION OF CONTROLLED SUBSTANCES.

The trial court then explained that Detective Harvey averred that, in his experience, he had found records related to drug trafficking stored in electronic media of various kinds, including cell phones, jump drives, computers, and tablets. The trial court concluded that the search warrant was sufficiently specific because it indicated the circumstances and the nature of the activity under investigation and did not give the executing officers unlimited discretion to determine which items were subject to search and seizure.

{¶9} After the trial court denied his motion to suppress, Byrd pleaded no contest to the charged offenses. The trial court found Byrd guilty and sentenced him accordingly.

(ECF No. 8-1, PageID #: 167-71).

## III. Additional State Procedural History

### A. Indictment, Trial, Verdict, and Sentencing

On October 12, 2023, a Summit County grand jury charged Petitioner in a five-count indictment with (1) trafficking in cocaine; (2) possession of cocaine; (3) aggravated possession of drugs; (4) possession of marihuana; and (5) having weapons while under disability. (ECF No. 8-1, PageID #: 63-66). Petitioner entered not guilty pleas as to all charges on November 9, 2023. (*Id.* at PageID #: 67). On February 6, 2024, the grand jury charged Petitioner in a supplemental indictment with five additional counts as follows: (6) trafficking in a fentanyl-related compound; (7) possession of a fentanyl-related compound; (8) aggravated possession of drugs; (9) possession of drugs; and (10) possession of drugs. (*Id.* at PageID #: 69-72). Petitioner entered not guilty pleas to the additional charges on February 14, 2024. (*Id.* at PageID #: 73).

As detailed above, Petitioner moved to suppress all evidence seized pursuant to the challenged warrant and the trial court denied the motion. (*See* ECF No. 8-1, PageID #: 75-97). Subsequently, on July 23, 2024, Petitioner withdrew his not guilty pleas and pled no contest to all charges. (*Id.* at PageID #: 98-99). The trial court concluded that Count 2 merged with Count 1 and Count 7 merged with Count 6 for purposes of sentencing, and sentenced Petitioner to imprisonment for an indefinite term of a minimum of not less than 5 years and not more than 7.5 years on Count 1; the same sentence as to Count 6; and definite terms of 36 months on Count 3; 12 months on Count 4; 36 months on Count 5; 12 months on Count 8; 6 months on Count 9; and 6 months on Count 10, all to be served concurrently. (*Id.* at 99-101).

### B. Direct Appeal

Petitioner appealed his conviction and sentence to the Ninth District Court of Appeals. (ECF No. 8-1, PageID #: 108). Petitioner raised a single assignment of error, arguing that the trial

court erred in denying the motion to suppress because the affidavit failed to satisfy the Particularity Clause and did not set forth probable cause. (*Id.* at PageID #: 123-37). The State filed an opposition brief. (*Id.* at PageID #: 138-51). On March 26, 2025, the appellate court overruled Petitioner's assignment of error and affirmed his convictions. (*Id.* at PageID #: 167-81).

**C. Appeal to the Ohio Supreme Court**

On June 18, 2025, Petitioner filed a pro se appeal to the Ohio Supreme Court, as well as a motion for leave to file a delayed appeal. (ECF No. 8-1, PageID #: 182-89). The Ohio Supreme Court granted the motion for delayed appeal. (*Id.* at PageID #: 214). Petitioner then filed a memorandum in support of jurisdiction, challenging the denial of his motion to suppress. (*Id.* at PageID #: 215-25). The State waived filing of a response. (*Id.* at PageID #: 241). On October 28, 2025, the Ohio Supreme Court declined to accept jurisdiction. (*Id.* at PageID #: 242).

## IV. Federal Habeas Corpus Petition

On or about January 9, 2026, Byrd filed a pro se petition for federal habeas corpus relief. (ECF No. 1). Petitioner raises a single ground for relief: "The trial court erred in denying Defendant's-Appellant's motion to suppress." (*Id.* at PageID #: 7). Respondent filed a return of writ on April 24, 2026, arguing that Petitioner's single ground for relief is not cognizable and/or meritless. (ECF No. 24). Petitioner did not file a traverse and the time to do so expired. (*See* ECF No. 5).

## V. Legal Standards

Because Petitioner is a state prisoner seeking federal habeas relief, his petition is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), and corresponding case law.

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground

that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in the application of state law … are usually not cognizable in federal habeas courts." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).

Where, as here, a state court has addressed a petitioner's claims, federal habeas relief shall not be granted unless the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v.*

*Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id*.

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding

in question, "on habeas review that does not suffice to supersede the trial court's … determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet… because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id*. at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state courts decision conflicts with this Court's precedents" and "goes no further." *Id*. Thus, to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## VI. Discussion

Respondent argues Petitioner's single ground for relief is not cognizable on federal habeas review. (ECF No. 8 at 9-17). Specifically, Respondent argues the United States Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976) prohibits federal habeas relief when a state prisoner alleges that evidence obtained in an unconstitutional search or seizure was introduced at trial. (*Id.* at 9). Respondent asserts that "[s]ince Byrd was able to present his claim to the trial court during a suppression hearing, to the Ohio Court of Appeals, and to the Supreme Court of Ohio in his memorandum in support of jurisdiction, he had ample 'opportunity for full and fair consideration'" of the issue and is not entitled to federal habeas relief. (*Id.* at 17 (citing *Stone*, 428 U.S. at 620 and *Good v. Berghuis*, 729 F.3d 636, 640 (6th Cir. 2013))).

Petitioner failed to file a traverse and thus has failed to present any argument to the Court as to why his claim is cognizable on federal review.

As Respondent argues, the United States Supreme Court held in *Stone* that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 482. This is because "the key purpose of federal habeas corpus is to free innocent prisoners[, b]ut whether an investigation violated the Fourth Amendment has no bearing on whether the defendant is guilty." *Good*, 729 F.3d at 637 (citing *Stone*, 428 U.S. at 490). Further, "exclusion is a prudential deterrent prescribed by the courts, not a personal right guaranteed by the Constitution" and "[a]ny deterrence produced by an additional layer of habeas review is small, but the cost of undoing final convictions is great." *Id.* An "'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Id.* at 639. Thus, where a suppression motion is presented to and rejected by a state trial court and the state appellate courts also find no error, federal habeas corpus review is precluded. *Id.* at 640.

Such is exactly the situation here. Petitioner has presented his challenge to the search at each level of the state courts, and every court has rejected his arguments. Because he has had an opportunity for full and fair consideration of his claim, his claim is not cognizable on federal habeas review under *Stone*. Thus, the petition should be dismissed.

## VII. Certificate of Appealability

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on

appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."). The "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Here, Petitioner's single ground for relief is non-cognizable. If the Court accepts the foregoing recommendation, then Petitioner has not made a substantial showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue a certificate of appealability.

**VIII. Recommendation**

Petitioner has presented only a non-cognizable claim. Thus, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

Dated: October 21, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).